UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FRANK B.,

                Plaintiff,

v.                                                                 CASE # 20-cv-01324

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | MARY ELLEN GILL, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JUDITH COHEN, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **GRANTED**, defendant's motion is **DENIED,** the decision of the Commissioner is

**REVERSED**, and this matter is **REMANDED** for further administrative proceedings consistent with this order.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born on June 15, 1971 and has at least a high school education. (Tr. 193, 197). Generally, plaintiff's alleged disability consists of traumatic brain injury, chronic migraine headaches, amnesia/difficulty focusing, major depression, anxiety, visual disturbance/balance issues, seizures, fibromyalgia, obesity, and cervical spine injury. (Tr. 196). His alleged onset date of disability is August 15, 2016 and date last insured is December 31, 2022. (Tr. 20, 193). At the hearing, plaintiff requested a closed period starting August 15, 2016 through October 1, 2018 on the basis that he returned to work. (Tr. 20).

   B.      Procedural History

On October 18, 2017, plaintiff applied for Disability Insurance benefits under Title II of the Social Security Act. (Tr. 174). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On September 16, 2019, plaintiff appeared before ALJ Stephen Cordovani. (Tr. 37-97). On September 26, 2019, ALJ Cordovani issued an unfavorable decision finding plaintiff not disabled under the Social Security Act. (Tr. 15-32). On July 20, 2020, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

   C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant engaged in substantial gainful activity during the following periods: beginning October 1, 2018 and through the date of the decision (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, psychogenic seizure disorder, migraines, post-concussion syndrome, and fibromyalgia. (20 CFR 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) because the claimant can walk and/or stand for up to six hours in an eight-hour day, sit for up to six hours in an eight hour day, occasionally lift and/or carry up to twenty five pounds, frequently lift and/or carry up to ten pounds, and push and/or pull as much as he can lift and/or carry. The claimant can occasionally bend, kneel, crouch, or crawl; the claimant can occasionally twist and turn his neck beyond 45 degrees to the left or right of center; the claimant can perform work where he can alternate between sitting and standing every thirty minutes while remaining on task; the claimant can perform work with no balancing activities on uneven ground; the claimant can climb no ladders, ropes or scaffolds; the claimant cannot work around hazards such as loud noise, unprotected heights or dangerous moving mechanical parts.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8. The claimant was born on June 15, 1971 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2016, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-32).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff argues the ALJ mischaracterized the opinion of consultative examiner Dr. Santarpia and failed to include any of his mild to moderate mental limitations despite finding the opinion persuasive. (Dkt. No. 12 at 14 [Plaintiff's Mem. Of Law]).

### B. Defendant's Arguments

In response, defendant argues the ALJ properly considered if plaintiff had mental limitations. (Dkt. No. 13 at 7 [Defendant's Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.   ANALYSIS**

Plaintiff essentially argues that the ALJ's RFC was not supported by substantial evidence because it did not reflect any mental limitations. (Dkt. No. 12). The ALJ found plaintiff's medically determinable mental impairments of generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder to be nonsevere. (Tr. 22). However, the ALJ's finding of severe impairments did include psychogenic seizure disorder, migraines and post-concussion syndrome. (Tr. 20). The ALJ specifically noted in the step two finding that claimant's allegation of difficulty focusing was a symptom, closely related to the condition of post-concussion syndrome. (Tr. 21). Although both the severe and non-severe impairments are related to mental abilities the RFC contained no mental limitations. (Tr. 20).

The ALJ references the accident where plaintiff sustained an injury to the head during work and the treatment afterwards. (Tr. 25). The ALJ also briefly discussed plaintiff's headaches and referenced the cognitive skills development therapy and vestibular rehabilitation which were part of the neurologist's treatment plan. (Tr. 26, *referring to* 528). Indeed, in September 2016 plaintiff began neurological treatment with Western New York Headache Care under Dr. Kang, one month after the alleged onset date. (Tr. 526). Treatment records as early as December 2016 from the headache clinic discuss that the headaches were one of the associated symptoms of post-concussion syndrome. (Tr. 534). However, plaintiff was also consistently reporting additional

symptoms, such as difficulty concentrating, memory loss, anxiety, and blurred vision. (Tr. 526). In September 2017, plaintiff reported to Dr. Kang's staff that he was experiencing memory issues. (Tr. 448). In January 2018, a treatment record from treating neurologist Dr. Kang reports plaintiff was still struggling with memory and concentration despite cognitive rehabilitation. Likewise, in March 2018, Dr. Kang noted plaintiff was still experiencing short-term memory loss and word finding difficulty. (Tr. 782). At both visits, the review of symptoms was positive for decreased memory, dizziness, speech difficulties, anxiety, inability to concentrate, depression and visual changes. (Tr. 777, 781). Dr. Kang referred plaintiff for neuropsychometric testing to confirm the persistent post-concussion syndrome and symptoms, but it was never approved. (Tr. 778, 782).

Despite allegations of ongoing cognitive issues due to the head injury, ALJ Cordovani only once references cognitive rehabilitation treatment with continued memory and concentration difficulties. (Tr. 25). In December 2017, cognitive therapy records indicated plaintiff was utilizing a cell phone app to help with name and event recall, but the ALJ summarized simply that the cognitive therapy was beneficial, and the plaintiff was doing better with recall and remembering. (Tr. 26 *referring to* Tr. 346). The ALJ correctly noted plaintiff's difficulty with deductive reasoning in a follow-up treatment in 2017 but misleadingly observes that plaintiff stopped therapy to undergo Botox treatments and other testing. (Tr. 20 *referring to* 437-38). The full treatment summary letter recounts that the plaintiff would be unable to return to therapy for approximately a month because of testing and Botox treatment for a suspected seizure disorder. (*Id.*). Although physical therapy records are in the administrative record, there are none from cognitive language therapy, only treatment summary letters provided to plaintiff's treating physician Dr. Aquino. (Tr. 437). The ALJ concluded that the claimant never returned to treatment before beginning work in October 2018. (Tr. 26). Treatment records from other providers, specifically from neurologist Dr.

Kang discussed above, however indicate continued reports of mental limitations despite regular Botox and block injections.

Although the ALJ determined headaches and post-concussion syndrome to be severe impairments, and treatment records of what mental symptoms these impairments caused, the ALJ's RFC included only exertional, postural, and environmental limitations. (Tr. 24). The ALJ found the headaches and post-concussion syndrome only limited plaintiff's ability to tolerate exposure to hazards such as unprotected heights, loud noise, or dangerous moving mechanical parts. (Tr. 26). Unfortunately, the ALJ's decision inexplicably neglected to discuss the mental limitations that were associated with the head injury, instead discussing mental limitations only as they related to mental health impairments. (Tr. 22-23). Even though ALJ Cordovani relies heavily on the findings of State Agency review physician Dr. Brown at Step Two, finding his opinion persuasive[1], Dr. Brown had also discussed neurocognitive disorders as a non-severe medically determinable impairment. (Tr. 103). Although an ALJ is not required to discuss in depth every piece of evidence contained in the record, the evidence of record must permit the Court to glean the rationale of an ALJ's decision. *See LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011).

Plaintiff also asserts the ALJ did not properly consider the opinion of psychiatric consultative examiner Dr. Santarpia. ALJ Cordovani found the opinion to be persuasive but did not include any of the limitations. Dr. Santarpia opined that plaintiff was "mildly to moderately"

---

[1] On January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations became effective on March 27, 2017 and therefore apply to this claim. *Id.*

limited in a variety of functions, including understanding, remembering, and applying complex directions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating emotions, controlling behavior, and maintaining well-being, and being aware of normal hazards and taking appropriate precautions. (Tr. 583). As discussed above, despite finding the opinion persuasive the ALJ concluded any limitations were only mild because plaintiff was able to return to work at a "complex sedentary job" without a change in his clinical presentation or treatment. (Tr. 30). The ALJ did not cite any other evidence regarding persuasiveness or consistency. In determining how persuasive the ALJ finds a medical source's medical opinions or prior administrative medical findings to be, the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ did not discuss the records that would have been consistent or supported the opinion, or vice versa. For example, the record indicates plaintiff was seen in August 2018 by Dr. Geraci and reported he was no longer under the care of a neurologist because the provider moved but plaintiff was referred to new physicians to replace the care he was being provided. (Tr. 840). Plaintiff also testified that he financially had to return to work to provide for his family as they were experiencing financial hardship and had lost their home. (Tr. 67, 76).

      In addition to not fully discussing the consistency and supportability of the opinion, the ALJ incorrectly conveyed that Dr. Santarpia found plaintiff's psychiatric conditions were not severe enough to significantly interfere with work related functions. However, Dr. Santarpia's finding was that plaintiff's limitations were "consistent with psychiatric problems that until better treated and stabilized may interfere with the claimant's ability to function on a daily basis." (Tr. 583). *See Dejohn v. Colvin*, 2015 WL 4662817, *2 (W.D.N.Y. Aug. 6, 2015) ("As the

Commissioner acknowledges, by misquoting this aspect of Dr. Finnity's opinion, and then incorporating it into his assessment of Plaintiff's RFC, the ALJ committed reversible error."); *Haggerty v. Comm'r of Soc. Sec.*, 2011 WL 841443, *8 (N.D.N.Y. Feb. 14, 2011), report and recommendation adopted sub nom. *Haggerty v. Astrue*, 2011 WL 841288 (N.D.N.Y. Mar. 8, 2011) ("Because the ALJ was inaccurate and inappropriately selective in presenting Dr. Minhas' opinions in his decision, and because of the uncertainty regarding the medical opinions on which the ALJ actually relied, this court cannot conclude that her RFC finding is supported by substantial evidence."). Defendant's argument that the ALJ's statement was not incorrect because Dr. Santarpia did not quantify the term "may" with "significant" is unavailing. (Dkt. No. 13 at 9). The ALJ plainly did not include the word "may" in his recitation of the opinion conclusion. Defendant's post-hoc rationalizations, including the meaning of additional terms not included by the examiner, are unavailing. *See Thomas v. Colvin*, 302 F. Supp. 3d 506, 511 (W.D.N.Y. 2018) ("post hoc rationalizations are not an appropriate substitute for an ALJ's duty to support her conclusions by reference to substantial evidence"). Additionally, defendant focuses on the lack of mental health treatment records and lack of formal psychiatric diagnosis in support of their argument, but the treating neurology records clearly indicate there are mental limitations associated with the post-concussion syndrome. Non-exertional limitations and mental abilities are not solely related to just mental health impairments.

To be sure, even if the limitations are considered mild and not moderate as opined, the Court is unable to follow the ALJ's logic for not including any mental limitations despite finding the opinion persuasive. *See Jimmie E. v. Comm'r of Soc. Sec.*, 2021 WL 2493337, at *5 (W.D.N.Y. June 18, 2021) (remanding where "the ALJ did not include any of [the consulting examiner's] limitations in the RFC determination despite concluding the areas of limitation identified by Dr.

Jonas were persuasive"); *Peters v. Comm'r of Soc. Sec.*, 2020 WL 772364, *4 (W.D.N.Y. Feb. 18, 2020) ("Even where the limitations opined were vaguely opined as 'mild,' an ALJ is required to explain why she rejected those limitations.") (*citing Legette v. Colvin*, 2014 WL 4161963, *6 (E.D.N.Y. Aug. 19, 2014) (remanding where "the ALJ failed to consider [plaintiff's] 'mild problems dealing with stress' ")). An ALJ must conduct a distinct analysis that would permit adequate review on appeal, and each of the ALJ's conclusions must be supported by relevant medical evidence. *Aung Winn v. Colvin*, 541 Fed. Appx. 67, 70 (2d Cir. 2013). It is unclear from the analysis of the medical records, particularly related to the post-concussive syndrome with related mental symptoms, and the opinion evidence if the ALJ clearly considered the mental effects of the severe and not severe impairments when formulating the RFC. *See* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). When an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported his RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc, Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018).

**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: May 13, 2022　　　　　　　　　　　　　*J. Gregory Wehrman*

Rochester, New York　　　　　　　　　　　　HON. J. Gregory Wehrman
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge